UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCAS PALACIOS ALVARADO,

          Petitioner,

     v.

SHAWN GILLIS, *et al.*,

          Respondents.

No. 22 Civ. 10082 (JLR) (KHP)

# RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2614

NANCY D. PHAM
Special Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ............................................................................................................2

    A.    Alvarado's Entry Into the United States and Immigration History ........................2

    B.    Alvarado's Criminal History and Arrest by ICE ....................................................3

    C.    Alvarado Post-Conviction Immigration Proceedings ............................................4

    D.    Alvarado's Petition for Review and ICE's Post-Order Custody Review ...............5

ARGUMENT ................................................................................................................7

    I.    THE COURT SHOULD TRANSFER THIS HABEAS ACTION TO THE
        WESTERN DISTRICT OF LOUISIANA BECAUSE JURISDICTION LIES IN
        THE DISTRICT OF CONFINEMENT ....................................................................7

    II.    ALVARADO IS DETAINED UNDER § 1231(a) ...................................................8

        A.    General Statutory Scheme ..........................................................................8

        B.    The BIA's Dismissal of Alvarado's Appeal of the Immigration
            Judge's Removal Order Triggered a Shift in Detention Authority from
            § 1226(a) to § 1231(a) ..............................................................................10

        C.    Alvarado Remains Subject to Detention Under § 1231(a) Because
            the Government's Forbearance Policy Is Not a Court-Ordered Stay ........11

    III.    THE COURT SHOULD DENY ALVARADO'S PETITION BECAUSE HIS
        DETENTION UNDER § 1231(a) IS LAWFUL AND COMPORTS WITH DUE
        PROCESS .............................................................................................................13

        A.    Framework for Challenges to Post-Order Detention .................................13

        B.    Alvarado's Post-Order Detention Is Statutorily Authorized and Lawful ..14

        C.    Section 1231(a)(6) and Its Implementing Regulations Satisfy Due Process
            ....................................................................................................................17

        D.    Alvarado's Detention Under § 1231(a) Has Not Become
            Unconstitutionally Prolonged Because His Removal Remains Reasonably
            Foreseeable ...............................................................................................19

IV.    EVEN IF THE COURT DECIDES THAT ALVARADO IS CURRENTLY
       DETAINED UNDER § 1226(a), THE COURT SHOULD STILL DENY HIS
       HABEAS PETITION BECAUSE HE RECEIVED A CONSTITUTIONALLY
       ADEQUATE BOND HEARING ............................................................................21

       A.    Detention Under 8 U.S.C. § 1226(a)..........................................................21

       B.    Alvarado Received a Bond Hearing Consistent with Due Process............24

CONCLUSION....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                  **Page(s)**

*Abel v. United States*,
   362 U.S. 217 (1960) ........................................................................................... 22

*Abimbola v. Ridge*,
   181 F. App'x 97 (2d Cir. 2006) ...................................................................... 17

*Agoro v. Dist. Dir. for Immigration Custom Enf't*,
   *09 Civ. 8111* (SAS), 2010 WL 9976 (S.D.N.Y. Jan. 4, 2010) ............................... 17

*Akinwale v. Ashcroft*,
   287 F.3d 1050 (11th Cir. 2002) ...................................................................... 15

*Andoh v. Barr*,
   *No. 19 Civ. 8016* (PAE), 2019 WL 4511623 (S.D.N.Y. Sept. 18, 2019) ............... 8

*Barton v. Barr*,
   140 S. Ct. 1442 (2020) .................................................................................... 1

*Beckford v. Lynch*,
   168 F. Supp 3d 533 (W.D.N.Y. 2016) ............................................................. 15

*Brathwaite v. Barr*,
   475 F. Supp. 3d 179 (W.D.N.Y. 2020) ........................................................ 12, 13

*Callender v. Shanahan*,
   281 F. Supp. 3d 428 (S.D.N.Y. 2017) ............................................................. 15

*Chupina v. Holder*,
   570 F.3d 99 (2d Cir. 2009) ............................................................................. 9

*Demore v. Kim*,
   538 U.S. 510 (2003) .................................................................................. 19, 24

*Doe v. Decker*,
   *No. 21 Civ. 5257* (LGS), 2021 WL 6066015 (S.D.N.Y. Nov. 19, 2021) ............... 13

*Garcia v. Decker*,
   *No. 20-cv-1345* (LJL), 2020 WL 1435007 (S.D.N.Y. Mar. 24, 2020) ................... 25

*Guangzu Zheng v. Decker*,
   618 F. App'x 26 (2d Cir. 2015) ................................................................... 16-17

*Guo v. Napolitano*,
   *No. 09 Civ. 3023* (PGG), 2009 WL 2840400 (S.D.N.Y. Sept. 2, 2009) ................. 8

*Hechavarria v. Sessions*,
  891 F.3d 49 (2d Cir. 2018) ................................................................ 11, 12

*Hylton v. Shanahan*,
  *15 Civ. 1243* (LTS), 2015 WL 3604328 (S.D.N.Y. June 9, 2015) ........................................ 25

*In re Immigration Petitions for Review Pending in the U.S. Court of Appeals for the Second Circuit*,
  702 F.3d 160 (2d Cir. 2012) ................................................................ 10

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ................................................................ 22, 25

*Johnson v. Arteaga-Martinez*,
  142 S. Ct. 1827 (2022) ................................................................ 9, 14. 20

*Johnson v. Guzman Chavez*,
  141 S. Ct. 2271 (2021) ................................................................ 8, 22-23

*Joseph v. Dep't of Homeland Sec.*,
  No. CIVA 05-5233 (JLL), 2006 WL 1644875 (D.N.J. June 12, 2006) ................................ 19

*Joseph v. United States*,
  127 F. App'x 79 (3d Cir. 2005) ................................................................ 16

*Juma v. Mukasey*,
  *No. 09 Civ. 3122* (PAC) (AJP), 2009 WL 2191247 (S.D.N.Y. July 23, 2009) .................... 16

*Khemlal v. Shanahan*,
  *No. 14-cv-5186*, 2014 WL 5020596 (S.D.N.Y. Oct. 8, 2014) .............................. 15

*Luna-Aponte v. Holder*,
  743 F. Supp. 2d 189 (W.D.N.Y. 2010) ................................................................ 15

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................ 24

*Moscoso v. Joyce*,
  *22 Civ. 6272* (PKC), 2023 WL 2016371 (S.D.N.Y. Feb. 15, 2023) ................................ 12-13

*Nielsen v. Preap*,
  139 S. Ct. 954 (2019) ................................................................ 22

*Obikanye v. I.N.S.*,
  78 F. App'x 769 (2d Cir. 2003) ................................................................ 17

*Portillo v. Decker*,
  *No. 21 Civ. 9506* (PAE), 2022 WL 826941 (S.D.N.Y. Mar. 18, 2022) .................. 15, 17, 21

*Prieto-Romero v. Clark*,
  534 F.3d 1053 (9th Cir. 2008) ................................................................ 24

*Reno v. Flores,*
    507 U.S. 292 (1993) ................................................................ 24

*Rivas v. Searls,*
    *No. 21 Civ. 6469* (CJS), 2022 WL 117950 (W.D.N.Y. Jan. 12, 2022) ........................ 10-11

*Robinson v. Dist. Dir. for ICE,*
    *09 Civ. 0637*, 2009 WL 3366439 (M.D. Pa. Oct. 19, 2009) ............................ 18-19

*Rodriguez Del Rio v. Price,*
    *No. 20 Civ. 217* (FM), 2020 WL 7680560 (W.D. Tex. Nov. 3, 2020) .................... 18

*Rumsfield v. Padilla,*
    542 U.S. 426 (2004) ............................................................. 7, 8

*Shiqi Xue v. Holder,*
    354 F. App'x 596 (2d Cir. 2009) ................................................... 11

*Singh v. Decker,*
    *No. 20 Civ. 9089* (JPC), 2021 WL 23328 (S.D.N.Y. Jan. 4, 2021) ...................... 8

*Velasco Lopez v. Decker,*
    *No. 19 Civ. 2912* (ALC), 2019 WL 2655806 (S.D.N.Y. May 15, 2019) ................... 23

*Velasco Lopez v. Decker,*
    978 F.3d 842 (2d Cir. 2020) .................................................. 22, 23

*Wang v. Ashcroft,*
    320 F.3d 130 (2d Cir. 2003) ........................................... 9, 10, 12, 17

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) .......................................................... *passim*

## Administrative Decisions

*Matter of Adeniji,*
    22 I. & N. Dec. 1102 (BIA 1999) ................................................ 23

*Matter of D-J-,*
    23 I. & N. Dec. 572 (A.G. 2003). ............................................ 22, 23

*Matter of Guerra,*
    24 I. & N. Dec. 37 (BIA 2006) .................................................. 23

*Matter of Uluocha,*
    20 I. & N. Dec. 133 (BIA 1989) ................................................. 24

## Federal Statutes

28 U.S.C. § 2241 ................................................................. 7, 8

8 U.S.C. § 1101 .................................................................... 10

8 U.S.C. § 1182 ......................................................................................................... 2

8 U.S.C. § 1225(b) .................................................................................................... 9

8 U.S.C. § 1226 ........................................................................................................ 9

8 U.S.C. § 1226(a) ............................................................................................ *passim*

8 U.S.C. § 1231 ................................................................................................ *passim*

8 U.S.C. § 1252 ...................................................................................................... 10

## Regulations

8 C.F.R. § 236.1 ....................................................................................... 22, 23, 24

8 C.F.R. § 241.13 ................................................................................................... 18

8 C.F.R. § 241.4 .......................................................................................... 14, 17, 18

8 C.F.R. § 1003.19 ........................................................................................... 22, 24

8 C.F.R. § 1241.1 ................................................................................................... 25

8 CFR § 1236.1 ........................................................................................................ 6

8 CFR § 1241.1 ........................................................................................................ 6

## State Statutes

New York Vehicle and Traffic Law § 1192 ............................................................. 3

New York Penal Law § 120.00 ................................................................................ 3

New York Penal Law § 120.20 ................................................................................ 3

New York Penal Law § 220.06(05) .......................................................................... 3

New York Penal Law § 240.20 ................................................................................ 3

The government respectfully submits this memorandum of law in opposition to the petition for a writ of habeas corpus ("Petition" or "Pet.") (ECF No. 1) filed by petitioner Lucas Palacios Alvarado ("Alvarado").

## PRELIMINARY STATEMENT

Alvarado, a noncitizen[1] entered the United States ("U.S.") without inspection, admission, or parole on or about April 30, 2014. On May 1, 2014, the Department of Homeland Security ("DHS") served Alvarado with a Notice to Appear ("NTA") placing him in removal proceedings. In 2019, Alvarado was arrested for criminal possession of cocaine. In 2021, Alvarado was arrested, convicted, and incarcerated for driving while intoxicated (DWI) and assault related to the DWI. In August 2021, ICE officers arrested Alvarado at the Nassau County Correctional Center where he had been serving his criminal sentence. Initially, Alvarado's detention during his removal proceedings was governed by 8 U.S.C. § 1226(a), the general detention provision of the Immigration and Nationality Act ("INA"). While detained under § 1226(a), he received a custody review and determination the day ICE arrested him, followed by a bond hearing on May 18, 2022. However, in July 2022, Alvarado became subject to a final order of removal when the Board of Immigration Appeals ("BIA") dismissed his appeal of the denial of his application for relief from removal. Since that date, Alvarado has been detained under 8 U.S.C. § 1231(a), which applies once a noncitizen becomes subject to an administratively final removal order, pending his removal from the U.S.

Alvarado challenges his detention by U.S. Immigration and Customs Enforcement ("ICE"), arguing that it violates the Due Process Clause because it is unduly prolonged, since removal is not reasonably foreseeable, and ICE has conducted only one bond hearing.

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

As a threshold matter, venue is improper and the Court should transfer this habeas action to the Western District of Louisiana as the district of confinement.

As of July 26, 2022, the date his removal order became administratively final, Alvarado has been detained under § 1231(a), and any challenge to the constitutionality of his prior detention under § 1226(a) is moot. Moreover, his detention remains governed by § 1231(a) despite his pending petition for review and pending motion for a stay of removal with the Second Circuit, in accordance with the government's forbearance policy, his § 1231(a) post-order detention is statutorily authorized and lawful in accordance with the decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Additionally, the Post-Order Custody Review ("POCR") process, implemented after *Zadvydas* and applied to Alvarado, satisfies the requirements of 8 U.S.C. § 1231(a)(6) and the Due Process Clause. Alvarado's detention under § 1231(a) has not become unconstitutionally prolonged because his removal remains reasonably foreseeable.

Even if the Court were to conclude that Alvarado is currently detained under § 1226(a), which he is not, any due process claim based on his § 1226(a) detention is also without merit. Neither the record nor the law supports the contention that the initial custody review and determination and subsequent bond hearing violated due process. For these reasons, the Court should deny the Petition.

## BACKGROUND

### A.    Alvarado's Entry Into the United States and Immigration History

Alvarado, a native and citizen of Honduras, entered the United States without inspection, admission, or parole on or about April 30, 2014. *See* Declaration of Deportation Officer Reyna Beattie ("Decl.") ¶¶ 3, 4.

On May 1, 2014, DHS served Alvarado with a Notice to Appear, charging him with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the U.S. without

being admitted or paroled, or who arrives in the U.S. at any time or place other than as designated by the Attorney General. Decl. ¶ 5; Gov't Return Ex. 1. On the same day, Alvarado was designated an Unaccompanied Alien Child ("UAC") and placed in the custody of the Office of Refugee Resettlement ("ORR"), U.S. Department of Health and Human Services. On May 13, 2014, he was released from ORR custody to the custody of his father who resided in New York. Decl. ¶ 6. On September 5, 2014, Alvarado aged out of ORR jurisdiction when he turned 18 years old. Decl. ¶ 7.

On September 4, 2014, Alvarado filed Form I-589 requesting asylum and related relief with United States Citizenship and Immigration Services ("USCIS"). On November 6, 2014, an asylum officer interviewed Alvarado and later determined that he did not establish eligibility for asylum, referring his asylum application to the immigration judge ("IJ"). Decl. ¶8.

B.    Alvarado's Criminal History and Arrest by ICE

On September 16, 2019, the Nassau County Police Department ("NCPD") arrested and charged Alvarado of suspected possession of cocaine in violation of New York Penal Law ("NYPL") § 220.06(05). On November 19, 2019, in Nassau County District Court, Alvarado pled guilty to one count of disorderly conduct in violation of NYPL § 240.20. Decl. ¶¶ 15-16; Gov't Return Ex. 2.

On May 16, 2020, the NCPD arrested Alvarado for suspected driving while intoxicated and assault causing injury, in violation of NYPL § 120.00 (02), NYPL § 120.20, and New York Vehicle and Traffic Law ("VTL") § 1192 (03), and on August 11, 2021, the county court found Alvarado guilty pursuant to his plea of one count of assault in the third degree, recklessly causing injury, in violation of NYPL § 120.00 (02), and one count of driving while intoxicated, first offense, in violation of VTL § 1192 (02). The court sentenced Alvarado to 30 days in jail, 3 years of probation, alcohol treatment, and payment of monetary fines. Decl. ¶ 17, 18; Gov't Return Ex.

3.  On August 11, 2021, Nassau County incarcerated Alvarado at the Nassau County Correctional Center ("NCCC").  Decl. ¶ 19.

On August 20, 2021, ICE officers arrested Alvarado and served him with a notice of custody determination notifying him that he would be detained pending his removal proceedings because ICE deemed him a danger to the community and that he could seek a review of ICE's custody determination before an IJ. On the same day, Alvarado requested that an IJ review the custody determination. Decl. ¶¶ 20-22; Gov't Return Ex. 4.

### C.    Alvarado's Post-Conviction Immigration Proceedings

On October 25, 2021, Alvarado appeared with counsel for his first master calendar hearing on the detained docket. Alvarado's counsel informed the IJ that his Form I-360 for SIJ had been denied and the subsequent appeal was dismissed. The IJ adjourned the case for a merits hearing to adjudicate Alvarado's asylum application. Decl. ¶ 25.

On January 21, 2022, Alvarado and his counsel appeared for his first merits hearing at which the parties adduced testimony and documentary evidence. On February 14, 2022, the IJ issued a written decision denying Alvarado's requests for asylum relief and withholding of removal. Decl. ¶¶ 26-27; Gov't Return Ex. 5. Alvarado timely appealed to the Board of Immigration Appeals ("BIA"). Decl. ¶ 29.

Per Alvarado's request, the immigration court held a custody redetermination (bond) hearing on May 18, 2022. The IJ denied his request for a change in custody after finding that he was a danger to the community and posed a flight risk and issued a written memorandum on June 23, 2022.  8 U.S.C. § 1226(a). Decl. ¶ 30-31; Gov't Return Ex. 6, 7. Alvarado timely appealed the bond hearing decision to the BIA. Decl. ¶ 30.

On July 25, 2022, prior to the initiation of this habeas action, ICE transferred Alvarado from Orange County Correctional Facility in New York to Adams County Detention Center in

Natchez, Mississippi, as a result of Orange County Correctional Facility's expressed need to reduce its overall population. Decl. ¶ 32.

On July 26, 2022, also prior to the initiation of this action, the BIA dismissed Alvarado's appeal of the IJ's February 14, 2022 decision denying his relief from removal. That decision rendered Alvarado's removal order administratively final. His detention became governed by 8 U.S.C. § 1231(a). Decl. ¶ 33; Gov't Return Ex. 8.

### D.    Alvarado's Petition for Review and ICE's Post-Order Custody Reviews

On July 29, 2022, Alvarado filed a petition for review ("PFR") with the Second Circuit. Decl. ¶ 34. On September 6, 2022, he filed a motion for a stay of removal with the Second Circuit. As of today, the stay motion and the PFR remain pending. Decl. ¶ 35.

Due to Alvarado's pending PFR and motion for stay, ICE is forbearing removal pursuant to the government's forbearance policy with the Second Circuit, under which it voluntarily refrains from removing petitioners who have sought a stay until the Second Circuit has an opportunity to rule on the stay motion. Decl. ¶ 36. ICE routinely obtains travel documents for citizens of Honduras and frequently schedules charter flights to remove noncitizens to Honduras. ICE expects it will promptly obtain travel documents for Alvarado and alert the Second Circuit of its intent to remove him unless the Second Circuit grants a stay of removal.  Decl. ¶ 44.

On October 20, 2022, ICE served Alvarado with a Notice to Alien of File Custody Review, which explained that he was entitled to a post-order custody review on or about October 21, 2022. Decl. ¶ 37. On October 21, 2022, after completing a 90-day post-order custody review concerning Alvarado's detention, which included a review of his file record, personal interview, and supporting documents provided by him, ICE issued a Decision to Continue Detention finding that he should remain detained pending the outcome of his removal proceedings as ICE deemed that he posed a danger to the community and safety of other persons given that he was convicted of

assault and driving while intoxicated. ICE served Alvarado with a copy of this decision on October 21, 2021. In addition, Alvarado was notified, that in 90 days, jurisdiction of the next custody review would be transferred to ICE Headquarters ("ICE HQ") in Washington, DC. On this date. Decl. ¶ 38; Gov't Return Ex. 9.

On December 20, 2022, ICE served Alvarado with a Notice to Alien of File Custody Review, which explained that he was entitled to a post-order custody review on or about January 20, 2023. Alvarado indicated on the notice that he requested a personal interview. Decl. ¶ 39; Gov't Return Ex. 10.

On December 20, 2022, the BIA dismissed Alvarado's appeal of the May 18, 2022, custody hearing as moot.  8 CFR § 1241.1; 8 CFR § 1236.1(d)(1).  Decl. ¶ 40; Gov't Return Ex. 11.

On January 20, 2023, ICE ERO-NYC conducted a post-order custody review panel interview with Alvarado and his counsel as part of the 180-day post-order custody review process. On January 20, 2023, ICE ERO-NYC submitted to ICE ERO Headquarters the 180-day post-order custody review, which recommended that Alvarado continue to remain detained pending removal and noted that he remained a threat to the community based on his convictions. On February 3, 2023, ICE ERO Headquarters completed its review and issued the 180-day post-order custody review decision to continue detention. Decl. ¶ 41; Gov't Return Ex. 12.

On March 16, 2023, Alvarado was transferred from Adams County Detention Center to Winn Correctional Center in Louisiana, where he remains today. Alvarado is detained in a housing unit at Winn Correctional Center where immigration detainees are held separately from criminal inmates. Decl. ¶ 42.

On May 7, 2023, after considering Alvarado's file record, personal interview, and supporting documents, ICE ERO Headquarters completed a subsequent 90-day post-order custody review and issued a decision to continue detention. On May 11, 2023, Alvarado was notified that

he would be detained pending the outcome of his removal proceedings. While Alvarado remains

detained, ICE will continue to periodically review his detention and conduct post-order custody

reviews. Decl. ¶ 43; Gov't Return Ex. 13.

<u>ARGUMENT</u>

I. **THE COURT SHOULD TRANSFER THIS HABEAS ACTION TO THE WESTERN DISTRICT OF LOUISIANA BECAUSE JURISDICTION LIES IN THE DISTRICT OF CONFINEMENT**

When Alvarado filed this Petition on November 28, 2022, he had already been detained at

the Adams County Detention Center in Mississippi for four months. Decl. ¶ 32. On March 16,

2023, he was transferred to the Winn Correctional Center in Louisiana. Decl. ¶ 42. Accordingly,

Alvarado has never been detained within this District during the pendency of this action, and the

Court should transfer the Petition to the judicial district in which he is detained (i.e., the Western

District of Louisiana). Pursuant to 28 U.S.C. § 2241, district courts are limited to granting habeas

relief "within their respective jurisdictions." 28 U.S.C. § 2241. In *Rumsfield v. Padilla*, 542 U.S.

426 (2004), the Supreme Court held that, in a habeas challenge to present physical confinement,

i.e., a "core" habeas proceeding, "the district of confinement [is] synonymous with the district

court that has territorial jurisdiction over the proper respondent." Because the petitioner is detained

outside of this District, this Court lacks jurisdiction/venue over the petition.

As the majority of judges in this District have ruled, under the immediate custodian/district

of confinement rule set forth in *Padilla*, the Southern District of New York is not the proper forum

for challenges to present physical confinement brought under 28 U.S.C. § 2241 by aliens detained

outside this District. In *Padilla,* the Supreme Court grounded its thorough analysis of the federal

habeas statute (a fundamental protection against unlawful detention in many settings including

civil immigration detention) in basic principles of statutory interpretation, the statute's text,

history, and context, and Supreme Court case law interpreting the statute over more than a century.

*Padilla* distilled a rule, which applies to "core" habeas claims only (i.e., challenges to current detention): "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." 542 U.S. at 447.

A substantial majority of courts in this District have applied *Padilla*'s holding to order the transfer of core habeas claims asserted by a detained alien to the district of confinement. *See, e.g., Andoh v. Barr*, No. 19 Civ. 8016 (PAE), 2019 WL 4511623, at *2 (S.D.N.Y. Sept. 18, 2019).[2] In accordance with the overwhelming majority of judges in this District, this Court should apply the immediate custodian/district of confinement rule set forth in *Padilla* and transfer this case to the proper forum – the Western District of Louisiana.

## II.    ALVARADO IS DETAINED UNDER § 1231(a)

Alvarado is detained under 8 U.S.C. § 1231(a). He appears to concede this point as he "seeks relief from this Court as the subject of *post-removal* order detention" Pet. ¶ 10 (emphasis added). However, he also appears to make arguments regarding detention under 8 U.S.C. § 1226(a) by alleging due process deficiencies related to bond hearings. *See* Pet. ¶¶ 2, 39.  Accordingly, the Government will address why Alvarado's detention is governed by 8 U.S.C. § 1231(a).

### A.    General Statutory Scheme

"Federal immigration law contains various provisions authorizing the Government to detain aliens during the removal process." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021). The detention of noncitizens who are in ongoing removal proceedings is governed by either

---

[2] S*ee also Singh v. Decker*, No. 20 Civ. 9089 (JPC), 2021 WL 23328, at *4-5 (S.D.N.Y. Jan. 4, 2021) (citing cases and adopting the majority view); *Guo v. Napolitano*, No. 09 Civ. 3023 (PGG), 2009 WL 2840400, at *3 (S.D.N.Y. Sept. 2, 2009) (a "clear majority of district courts" within the Second Circuit have applied "the immediate custodian rule to habeas petitions filed by incarcerated aliens challenging their physical detention prior to deportation.") (collecting cases).

8 U.S.C. § 1226 or 8 U.S.C. § 1225(b).[3] Under § 1226(a), ICE may detain a noncitizen who has

entered the U.S. pending a decision in removal proceedings or may release the noncitizen on bond.

Once a noncitizen is subject to an administratively final removal order, detention authority

shifts to 8 U.S.C. § 1231(a). *See Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827, 1832 (2022) ("The

section at issue here, 8 U.S.C. § 1231(a), governs the detention, release, and removal of individuals

'ordered removed.'"); *Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("8 U.S.C. § 1231,

governs the detention of aliens subject to final orders of removal."). "An order of removal is 'final'

upon the earlier of the BIA's affirmance of the immigration judge's order of removal or the

expiration of the time to appeal the immigration judge's order of removal to the BIA." *Chupina v.

Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (citing 8 U.S.C. § 1101(a)(47)(B)).

Once a noncitizen's removal order is administratively final, § 1231 provides that ICE must

remove the noncitizen within a 90-day "removal period," during which detention is mandatory.

*See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2).  The removal period begins on the latest of:

> (i)     The date the order of removal becomes administratively final.
> (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).[4]  By its plain text, the statute contemplates that the "removal period"

will ordinarily commence on the date that the removal order becomes administratively final, and

that the "removal period" may commence if triggered by a subsequent event. 8 U.S.C.

---

[3] Section 1225(b) governs the pre-removal-order detention of applicants for admission, *i.e.*, arriving noncitizens, and is not relevant to this case.

[4] In some cases, ICE is unable to secure removal within the removal period. In those cases, ICE "may" continue to detain four categories of noncitizens: (1) "inadmissible" noncitizens, (2) noncitizens who are "removable" for national-security or foreign-policy reasons or for violating entry conditions, status requirements, or certain criminal laws, (3) noncitizens who pose a "risk to the community," and (4) noncitizens who are "unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

§ 1231(a)(1)(B)(ii) (contemplating a reversion to the statute governing the noncitizen's pre-order detention only "if the removal order is judicially reviewed *and if a court orders a stay of the removal of the alien*") (emphasis added).

Noncitizens may seek judicial review of a final removal order by timely filing a petition for review ("PFR") in the appropriate court of appeals. *See generally* 8 U.S.C. § 1252. In this Circuit, pursuant to the government's "forbearance policy," the government has agreed to refrain from removing noncitizens with a properly-filed PFR and a stay motion pending before the Second Circuit. *See, e.g.*, *In re Immigration Petitions for Review Pending in the U.S. Court of Appeals for the Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).

**B.    The BIA's Dismissal of Alvarado's Appeal of the Immigration Judge's Removal Order Triggered a Shift in Detention Authority from § 1226(a) to § 1231(a)**

From August 20, 2021, until July 26, 2022—a period of approximately 11 months— Alvarado was subject to permissive detention under 8 U.S.C. § 1226(a) during the pendency of his removal proceedings. But on July 26, 2022, after the BIA dismissed his appeal of the IJ's denial of his application for relief from removal, Decl. ¶ 33, he became subject to a final removal order. *See* 8 U.S.C. § 1101(a)(47)(B)(i) (an "order of deportation" becomes final upon the BIA's affirmance of such order).  Section 1231's removal period commences on "[t]he date the order of removal becomes administratively final."  8 U.S.C. § 1231(a)(1)(B)(i). Thus, as of July 26, 2022, Alvarado's detention was no longer governed by § 1226(a).

Once Alvarado's detention shifted to § 1231(a), any challenge to the constitutionality of his detention under § 1226(a) became moot. *See, e.g.*, *Wang*, 320 F.3d at 147 (when noncitizen became subject to detention under 8 U.S.C. § 1231, "[t]o the extent [he] previously may have had a cognizable . . . argument under [8 U.S.C. § 1226], that claim has been rendered moot"); *see also Rivas v. Searls*, No. 21 Civ. 6469 (CJS), 2022 WL 117950, at *4 (W.D.N.Y. Jan. 12, 2022) ("[T]he

Second Circuit has held that a challenge to an order of detention under § 1226 is moot once a final order of removal has been entered, as the alien at that point enters the ninety day 'removal period' during which detention is mandatory under § 1231(a)(2)." (citing *Shiqi Xue v. Holder*, 354 F. App'x 596, 597 (2d Cir. 2009)). To the extent that Alvarado is arguing that his detention under § 1226(a) violates Due Process, that portion of the Petition is moot. *See* Pet. ¶ 39.

### C.    Alvarado Remains Subject to Detention Under § 1231(a) Because the Government's Forbearance Policy Is Not a Court-Ordered Stay

Since the BIA's affirmance of Alvarado's removal order, the statutory basis for his detention has not changed. In fact, his detention has remained governed under § 1231(a) for the entire time his habeas petition has been pending. The government's forbearance policy is not a court-ordered stay of removal, and the Second Circuit has not ordered a stay of Alvarado's removal during the pendency of his PFR. Thus, he is still subject to detention under § 1231(a).

Alvarado's filing of a PFR and a motion for a stay of removal in the Second Circuit, which triggered the government's forbearance agreement, does not alter the applicable detention authority. In *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018), the Second Circuit considered which detention provision governed when a noncitizen subject to a final removal order filed a PFR and the Second Circuit formally granted the noncitizen's motion to stay removal during the pendency of that review—a situation in which the forbearance policy would not apply (and not present here). The Second Circuit examined the plain language of § 1231, specifically holding that the noncitizen's "removal period" had not yet begun because he had been granted a formal stay of removal while his removal order was being judicially reviewed, and thus § 1226 (*i.e.*, not § 1231) governed his detention. 891 F.3d at 55; *see* 8 U.S.C. § 1231(a)(1)(B)(ii) ("[i]f the removal order is judicially reviewed *and if a court orders a stay of the removal of the alien*," removal period begins on "the date of the court's final order" (emphasis added)). The Second Circuit expressly noted that

its holding did not extend to "judicial review during detention pursuant to the government's forbearance policy," 891 F.3d at 54 n.3, because that issue was not presented in that case.

Although the Second Circuit limited its holding in *Hechavarria* to the circumstances where a stay is granted, the decision supports the conclusion that Alvarado's detention is governed by § 1231(a) until a formal stay of removal is granted. Under the same plain language approach in *Hechavarria*, the commencement of Alvarado's removal period would be determined under § 1231(a)(1)(B)(i), the date that the removal order became administratively final – July 26, 2022. Unlike *Hechavarria*, the removal period would not be determined by reference to subsection (ii), which would apply only if the Second Circuit "*orders a stay* of the removal of the alien." 8 U.S.C. § 1231(a)(1)(B)(ii) (emphasis added); *see also Brathwaite v. Barr*, 475 F. Supp. 3d 179, 186 (W.D.N.Y. 2020) (because petitioner's "order of removal is 'administratively final,' and because the forbearance 'policy' is not a 'stay of removal," petitioner's "detention is governed by Section 1231"). *Hechavarria* instructs that courts should look to the plain language of § 1231(a), and that language requires "a stay" "order[ed]" by "a court." 8 U.S.C. § 1231(a)(1)(B)(ii).

The agency's forbearance, consistent with the government's agreement with the Second Circuit, is not a court-ordered stay of removal, and does not fall within the plain text of the statute. *See Wang*, 320 F.3d at 147 & n.27 (rejecting noncitizen's position that his detention can be reviewed under § 1226(c) instead of § 1231(a) where "[his] removal order has not been formally stayed" but rather "the Government agreed not to recommence the removal process until the habeas petition was resolved"); *see also Moscoso v. Joyce*, 22 Civ. 6272 (PKC), 2023 WL 2016371, *4 (S.D.N.Y. Feb. 15, 2023) ("The forbearance policy is fundamentally different than a stay and does not meet the statutory requirement of a court-ordered stay. The filing of a petition for review and requesting a stay is an insufficient basis under the statute. The order of removal ceases to be final only 'if a court orders a stay of the removal.' 8 U.S.C. § 1231(a)(1)(B)(ii). The statute is clear

about . . . the actor required, i.e., 'a court.'"); *Brathwaite*, 475 F. Supp. 3d at 187 (W.D.N.Y. 2020)

("The ordinary meaning of this statutory, court-ordered stay provision requires that a court actually

order a stay of removal."); *but see Doe v. Decker*, No. 21 Civ. 5257 (LGS), 2021 WL 6066015, at

*2 (S.D.N.Y. Nov. 19, 2021) (appeal pending) (" [the] removal stayed by the Forbearance Policy

should be governed by § 1226"). Here, because Alvarado's "order of removal is 'administratively

final,' and because the forbearance 'policy' is not a 'stay of removal," his "detention is governed

by Section 1231." *Brathwaite*, 475 F. Supp. 3d at 186.

## III.  THE COURT SHOULD DENY ALVARADO'S PETITION BECAUSE HIS DETENTION UNDER § 1231(a) IS LAWFUL AND COMPORTS WITH DUE PROCESS

### A.  Framework for Challenges to Post-Order Detention

The Supreme Court addressed ICE's authority to detain noncitizens after their removal

orders become final in *Zadvydas*. There, the Court held that 8 U.S.C. § 1231(a) authorizes

immigration detention for a period reasonably necessary to accomplish the noncitizen's removal

from the U.S. 533 U.S. at 699-700. The Court recognized six months as a presumptively reasonable

period of time to allow the government to accomplish a noncitizen's removal. *Id.* at 701. However,

the Supreme Court did not require the government to release every noncitizen whose detention

exceeds six months. Rather, the Court held:

> After this 6-month period, once the alien provides good reason to believe that
> there is no significant likelihood of removal in the reasonably foreseeable
> future, the Government must respond with evidence sufficient to rebut that
> showing. And for detention to remain reasonable, as the period of prior post-
> removal confinement grows, what counts as the "reasonably foreseeable
> future" conversely would have to shrink. *This 6-month presumption, of course,
> does not mean that every alien not removed must be released after six months.
> To the contrary, an alien may be held in confinement until it has been
> determined that there is no significant likelihood of removal in the reasonably
> foreseeable future.*

*Id.* (emphasis added).[5]

Thus, contrary to Alvarado's argument, Pet. ¶ 4, in a challenge to post-order detention, the Supreme Court placed the initial burden on the noncitizen. *Zadvydas,* 533 U.S. at 701. If the noncitizen fails to meet that burden, or if the government rebuts the noncitizen's showing, then continued detention is permissible. *Id.*

Noncitizens detained under § 1231(a) are not entitled to bond hearings before an IJ; instead, they receive custody reviews just prior to the expiration of the removal period, *see* 8 C.F.R. § 241.4(c)(1), (h)(1)-(2), and, if they remain detained beyond the removal period, periodically thereafter, *see id.* § 241.4(c)(2), (k). Moreover, the Supreme Court recently held that the text of § 1231(a)(6) does not require the government to provide noncitizens with a bond hearing after six months of detention in which the government bears the burden of proving by clear and convincing evidence that the noncitizen poses a flight risk or a danger to the community. *Arteaga-Martinez*, 142 S. Ct. at 1827.

### B. Alvarado's Post-Order Detention Is Statutorily Authorized and Lawful

Alvarado's argument that his post-order detention violates due process is without merit. To date, he has been detained under § 1231(a) for approximately 11 months and is not within the presumptively reasonable period of detention authorized under *Zadvydas*. But it does not follow that his ongoing detention necessarily violates due process. As explained above, the Supreme Court merely recognized six months as a presumptively reasonable period of detention, but notably did not hold that detention is no longer authorized after six months. The Court held that so long as such detention bore a reasonable relationship to the regulatory goal of "assuring the alien's

---

[5] The Supreme Court did not require the government to release every noncitizen whose detention exceeds six months. Instead, to prevent "indefinite" detention, the *Zadvydas* Court held that, after the six-month period has elapsed, a noncitizen may seek his release by demonstrating that his removal is not likely to occur in the reasonably foreseeable future. *Id.*

presence at the moment of removal," such detention did not run afoul of the Due Process Clause. *Zadvydas*, 533 U.S. at 699. The Due Process Clause placed no constitutional time limit on the period of such detention; rather, such detention is constitutionally permissible for so long a period as there is a "significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

Alvarado has not met his threshold burden of showing that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See id*. To the extent that Alvarado relies on the length of his detention to meet his initial threshold burden under *Zadvydas*, such reliance is misplaced. The passage of time, by itself, does not show that there is no significant likelihood of removal within the reasonably foreseeable future. *See, e.g.*, *Callender v. Shanahan*, 281 F. Supp. 3d 428 (S.D.N.Y. 2017) ("Regardless of the length of the detention to date, *Zadvydas* places the burden of proving that there is no significant likelihood of removal in the reasonably foreseeable future on the alien." (quotation omitted)); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051-52 (11th Cir. 2002) ("to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months *but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*") (emphasis added); *Beckford v. Lynch*, 168 F. Supp 3d 533, 539-40 (W.D.N.Y. 2016) (collecting cases).[6]

Alvarado asserts that, because he is undergoing review proceedings at the Second Circuit, his continued detention "is violative [sic] fundamental due process, and is cruel and unnecessary

---

[6] To the extent that the length of Palacios Alvarado's detention bears on the likelihood of his removal, courts have sustained far greater periods of detention where noncitizens have failed to produce evidence that there is no significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *See Portillo v. Decker*, No. 21 Civ. 9506 (PAE), 2022 WL 826941, at *4-5 (S.D.N.Y. Mar. 18, 2022) (denying petition where the detainee "ha[d] been detained for more than a year"); *Callender*, 281 F. Supp. 3d 428 (29 months); *Khemlal v. Shanahan*, No. 14-cv-5186, 2014 WL 5020596, at *4–5 (S.D.N.Y. Oct. 8, 2014) (detention of two years had been "lengthy", but was "not indefinite in the sense that concerned the Supreme Court in *Zadvydas*"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (39 months).

15

to the immediate purpose of removal, which clearly will not occur now or at any time in the near future" Pet. ¶ 4. However, "mere assertions that removal is unforeseeable do not satisfy [the petitioner's] burden [under *Zadvydas*]." *See Juma v. Mukasey*, No. 09 Civ. 3122 (PAC) (AJP), 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory, and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet non-citizen's initial burden); *see also id.* at *3 n.4 (collecting cases).[7]

Moreover, Alvarado is not facing *indefinite* detention, which was the concern in *Zadvydas*.[8] That Alvarado has filed a PFR and a stay motion with the Second Circuit, both still pending, does not render his removal unlikely to occur in the reasonably foreseeable future. If the Second Circuit denies the motion to stay (or the petition for review), Alvarado will be expeditiously removed; thus, his removal remains significantly likely to occur in the reasonably foreseeable future.[9] *See, e.g.*, *Guangzu Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) ("[T]he Government has been prevented from removing Zheng by the BIA's stay of removal (sought by Zheng) and by its own forbearance policy. If this Court denies Zheng's petition for review and pending stay motion, the Government can seek another travel document. Given this record, Zheng has not 'provide[d] good

---

[7] *cf. Joseph v. United States*, 127 F. App'x 79 (3d Cir. 2005) (holding that foreign national detained for more than two years had failed to meet his burden under *Zadvydas* that his removal was not reasonably foreseeable because there was no documentary evidence from his embassy or anyone connected with his home government to support his claim that travel documents would not be issued in the reasonably foreseeable future).

[8] In *Zadvydas*, the concern of "indefinite detention" arose where the petitioners could not be removed from the U.S. because their home countries would not accept their repatriation, yet the government continued to detain them. *See Zadvydas*, 533 U.S. at 684-86. There, the concern of "indefinite" detention was akin to permanent or eternal detention.

[9] Palacios Alvarado has also not provided any evidence regarding the feasibility of his removal to Honduras. As the Declaration explains, ICE routinely obtains travel documents for natives and citizens of Honduras, and it frequently schedules charter flights to remove noncitizens to Honduras. Decl. ¶ 44. And in Palacios Alvarado's case, "ICE expects it will promptly obtain travel documents for Palacios Alvarado and alert the Second Circuit of its intent to remove Palacios Alvarado unless the Second Circuit grants a stay of removal." *Id.*

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'"); *Portillo*, 2022 WL 826941, at \*5 ("[T]here is every reason to expect that, if the Circuit denies him relief, Portillo will promptly and successfully be removed. The United States regularly removes noncitizens to Honduras . . . and . . . stands ready to remove Portillo again once the proceedings pending in the Circuit are removed as an obstacle.").[10]

While Alvarado is free to pursue whatever efforts he deems appropriate to prevent his removal, such efforts do not make his removal unlikely or entitle him to relief under *Zadvydas*. *See Abimbola v. Ridge*, 181 F. App'x 97 (2d Cir. 2006) (noncitizen's filing of numerous petitions, delaying removal, does not entitle him to protection under *Zadvydas*); *Agoro v. Dist. Dir. for Immigration Custom Enf't*, No. 09 Civ. 8111 (SAS), 2010 WL 9976, at \*5 & n.72 (S.D.N.Y. Jan. 4, 2010) (similar). Accordingly, Alvarado's continued detention pending his removal remains lawful. *See, e.g.*, *Wang*, 320 F.3d at 146 (holding that noncitizen's due process rights "are not jeopardized by his continued detention as long as his removal remains reasonably foreseeable").

### C.    Section 1231(a)(6) and Its Implementing Regulations Satisfy Due Process

To the extent that Alvarado argues that bond hearings are required for post-removal-order detention, his position is unsupported by law. *See* Pet. ¶ 2 ("only one (1) hearing to determine his release has been conducted.") To the contrary, noncitizens detained under § 1231(a) are not entitled to bond hearings before an IJ, but they receive custody reviews just prior to the expiration of the removal period, *see* 8 C.F.R. § 241.4(c)(1), (h)(1)-(2). As discussed below, the POCR process, implemented after *Zadvydas* and applied to Alvarado, satisfies the requirements of 8 U.S.C. § 1231(a)(6) and the Due Process Clause. *See* 8 C.F.R. § 241.4.

---

[10] *See also Obikanye v. I.N.S.*, 78 F. App'x 769, 772 (2d Cir. 2003) ("Obikanye is not being held indefinitely beyond the removal period, but instead, only because he requested and was granted a stay of removal. Because Obikanye's removal is reasonably foreseeable, his detention does not implicate *Zadvydas;* he will be subject to removal if this Court denies his pending petition for review.").

The POCR regulations generally require a custody review by the field office at the end of the removal period (*i.e.,* usually after three months of post-removal-order detention), a further review by a review panel at ICE headquarters after six months, and additional reviews by the review panel annually thereafter (sooner if circumstances materially change). *Id.* §§ 241.4(k)(1) and (2). During those reviews, officials must consider both "[f]avorable factors" (such as "close relatives residing here lawfully") and unfavorable factors (such as "flight risk" and danger of "future criminal activity"). *Id.* §§ 241.4(f)(5), (7), and (8)(iii). The noncitizen has the right to submit evidence, to use an attorney or other representative, and, if appropriate, to seek a government-provided translator. *Id.* §§ 241.4(h)(2) and (i)(3).

Second, a separate set of regulations implements the Supreme Court's holding that § 1231(a)(6) permits detention only for "a period reasonably necessary to bring about th[e] alien's removal from the United States." *Zadvydas*, 533 U.S. at 689; *see* 8 C.F.R. § 241.13. If a noncitizen who has been detained for six months shows that "there is no significant likelihood of removal in the reasonably foreseeable future," adjudicators at ICE headquarters must review the noncitizen's case. 8 C.F.R. § 241.13(d)(1). The noncitizen has the right to submit evidence, to respond to the government's evidence, to be represented by an attorney, and, ultimately, to receive "a written decision based on the administrative record." *Id.* § 241.13(g); *see also id.* §§ 241.13(d), (e).

Courts have regularly rejected constitutional challenges to the POCR process, holding that that the existing POCR process is adequate. *See, e.g.*, *Rodriguez Del Rio v. Price*, No. 20 Civ. 217 (FM), 2020 WL 7680560, at *4 (W.D. Tex. Nov. 3, 2020) (petitioner not "held in violation of his procedural due process rights" where government completed the POCR under 8 C.F.R. § 241.4); *Robinson v. Dist. Dir. for ICE*, 09 Civ. 0637, 2009 WL 3366439, at *6 (M.D. Pa. Oct. 19, 2009) (finding "no merit to Petitioner's second claim that the POCR process violates procedural and substantive due process," and noting that had received custody reviews under the regulations

enacting after *Zadvydas*); *Joseph v. Dep't of Homeland Sec.*, No. CIVA 05-5233 (JLL), 2006 WL
1644875 at *4 (D.N.J. June 12, 2006) (considering POCR process in light of Fifth Amendment
challenge and "find[ing] that Petitioner is not entitled to any greater custody reviews than that
which [ICE] has already provided him").

Here, the process Alvarado has received complies with the above regulations. ICE
completed a 90-day POCR on October 21, 2022. Decl. ¶ 38; Gov't Return Ex. 9. On January 20,
2023, ICE ERO-NYC conducted a POCR panel interview with Alvarado and his counsel as part
of the 180-day POCR process. Decl. ¶ 41. On January 20, 2023, ICE ERO-NYC submitted to ICE
ERO Headquarters the 180-day post-order custody review, which recommended that Alvarado
continue to remain detained pending removal and noted that he remained a threat to the community
based on his convictions. *Id.* On February 3, 2023, ICE ERO Headquarters completed its review
and issued the 180-day post-order custody review decision to continue detention. *Id.* On May 7,
2023, after considering Alvarado's file record, personal interview, and supporting documents, ICE
ERO Headquarters completed a subsequent 90-day post-order custody review and issued a
decision to continue detention. Decl. ¶ 43. On May 11, 2023, Alvarado was notified of that decision
that he would be detained pending the outcome of his removal proceedings. *Id.* Furthermore, while
he remains detained, ICE will continue to periodically review his detention and conduct POCRs.
*Id.* Thus, Alvarado has been provided the process required by ICE regulations and by *Zadvydas*.

### D.    Alvarado's Detention Under § 1231(a) Has Not Become Unconstitutionally Prolonged Because His Removal Remains Reasonably Foreseeable

Alvarado argues that his detention under §1231(a) has become unconstitutionally
prolonged in violation of the Due Process Clause. Pet. ¶ 38. He appears to rely on *Demore v. Kim*,
538 U.S. 510 (2003): "continued detention of even criminal non-citizens becomes unreasonable
usually after six months, and the Executive Branch's implementation of § 1226(c) becomes
unconstitutional unless the Government has justified its actions at a hearing inquiring into whether

continued detention is consistent with the law's purposes of preventing flight and dangers to the community." Pet. ¶ 39. However, as discussed *supra*, Alvarado is being detained under §1231(a).[11] To the extent that he argues that §1231(a) requires a bond hearing to satisfy due process, the Supreme Court held that § 1231(a)(6) cannot reasonably be interpreted to require bond hearings. *Arteaga-Martinez*, 142 S. Ct. at 1832-34 (holding that nothing in the statute "address[es] or 'even hint[s]'" at a requirement that a noncitizen detained under 8 U.S.C. § 1231(a)(6) be afforded a bond hearing or release from detention after a certain period of time); *id.* at 1833 ("On its face, the statute says nothing about bond hearings before immigration judges or burdens of proof, nor does it provide any other indication that such procedures are required."). The Court in *Arteaga-Martinez* did not address the petitioner's constitutional challenge. *Id.* at 1835.

However, even if the Court were to consider Alvarado's due process challenge to his allegedly constitutionally "prolonged detention" under § 1231(a), his removal remains reasonably foreseeable, and thus his detention is statutorily authorized and does not violate substantive due process. Alvarado's conclusory allegations that his removal is no longer imminent or foreseeable, Pet. ¶¶ 1 (Introduction), 10, 42, ignore that the Supreme Court has already held that detention beyond six months is not necessarily prolonged. *Zadvydas*, 533 U.S. at 701. As discussed above in Argument Section III.B, where the Supreme Court has read a constitutional due process limit to § 1231 detention, it did so in a very specific circumstance for individuals whose detention was "indefinite, perhaps permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 699, 701 (2001). The *Zadvydas* Court found that while "indefinite, perhaps permanent, detention" (*i.e.*, detention with "no obvious termination point") would create constitutional concerns, this constitutional concern was not implicated if detention had an anticipated, reasonably foreseeable end point. *Id.* at 696-

---

[11] To the extent that Petitioner is applying this argument to §1226(a) detention, that will be addressed *infra*.

99. By reading the limits of § 1231's statutory authorization for detention to be the same as the constitutional limits on detention in this context, the Supreme Court foreclosed future due process arguments that would further narrow the length of the statute's detention authorization.

Here, because Alvarado has shown that it is only further judicial process and the government's forbearance policy that stand in the way of his removal, this Court should follow other decisions in concluding that his removal is reasonably foreseeable. *See, e.g.*, *Portillo*, 2022 WL 826941, at *5 ("For obvious reasons, a noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*. . . . Portillo speculates that the Second Circuit may not decide his petition before its summer recess. But even if that conjecture were to prove prescient, that would not make Portillo's removal not 'reasonably foreseeable' under *Zadvydas*." (internal citations omitted)). In order to grant the Petition, this Court would have to find that Alvarado's detention is likely to be prolonged beyond the "reasonably foreseeable future." Because his detention has a known end point (i.e., the Second Circuit's decision on his petition for review or his stay motion), the Court should determine that his detention under § 1231(a) has not become unduly prolonged.

## IV.  EVEN IF THE COURT DECIDES THAT ALVARADO IS CURRENTLY DETAINED UNDER § 1226(a), THE COURT SHOULD STILL DENY HIS HABEAS PETITION BECAUSE HE RECEIVED A CONSTITUTIONALLY ADEQUATE BOND HEARING

If the Court determines that 8 U.S.C. § 1226(a) governs Alvarado's detention, which it does not as explained *supra*, the Court should still deny his petition because he received a constitutionally adequate bond hearing. Alvarado's detention is lawful and he has suffered no constitutional or statutory violation in connection with his May 18, 2022 bond hearing.

### A.  Detention Under 8 U.S.C. § 1226(a)

The immigration laws have authorized immigration officials to charge noncitizens as removable, arrest noncitizens subject to removal, and detain noncitizens during their removal

proceedings. *See Abel v. United States*, 362 U.S. 217, 232-37 (1960). In the INA, Congress enacted a multi-layered statutory scheme for the civil detention of noncitizens pending a decision on removal, during the administrative and judicial review of removal orders, and in preparation for removal. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. "Detention during removal proceedings is a constitutionally valid aspect of the deportation process." *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020).

Section 1226 "generally governs the process of arresting and detaining . . . aliens pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). Section 1226(a) provides that "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). The Attorney General and DHS thus have broad discretionary authority to detain a noncitizen during removal proceedings.[12] *See* 8 U.S.C. § 1226(a)(1) (DHS "may continue to detain the arrested alien" during the pendency of removal proceedings); *Nielsen v. Preap*, 139 S. Ct. 954, 966 (2019) (highlighting that "subsection (a) creates authority for *anyone's* arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions"). When a noncitizen is apprehended, a DHS officer makes an initial custody determination. *See* 8 C.F.R. § 236.1(c)(8). DHS "may continue to detain the arrested alien." 8 U.S.C. § 1226(a)(1). "To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings."

---

[12] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), transferred all immigration enforcement and administration functions vested in the Attorney General, with few exceptions, to the Secretary of Homeland Security. The Attorney General's authority—delegated to immigration judges, *see* 8 C.F.R. § 1003.19(d)—to detain, or authorize bond for noncitizens under section 1226(a) is "one of the authorities he retains . . . although this authority is shared with [DHS] because officials of that department make the initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

*Guzman Chavez*, 141 S. Ct. at 2280-81. If DHS decides to release the noncitizen, it may set a bond or place other conditions on release. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 236.1(c)(8).

If DHS determines that a noncitizen should remain detained during the pendency of his removal proceedings, the noncitizen may request a custody redetermination hearing (*i.e.*, a "bond hearing") before an IJ. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d). The IJ then conducts a bond hearing and decides whether to release the noncitizen, based on factors that account for the noncitizen's ties to the U.S. and evaluates whether the noncitizen poses a flight risk or danger to the community. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

Section 1226(a) does not provide a noncitizen with a right to release on bond. *See Matter of D-J-*, 23 I. & N. Dec. at 575. Furthermore, § 1226(a) grants DHS and the Attorney General broad discretionary authority to determine whether to detain or release a noncitizen during his removal proceedings. *See id*. In the exercise of this broad discretion, and consistent with the DHS regulations, the BIA—whose decisions are binding on immigration judges—has placed the burden of proof on the noncitizen, who "must establish to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Matter of Guerra*, 24 I. & N. Dec. at 38; *accord Matter of Adeniji*, 22 I. & N. Dec. 1102, 1114 (BIA 1999); *but see Velasco Lopez v. Decker*, No. 19 Civ. 2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) (noting that courts have held that under the Due Process Clause, it is the government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)).[13]

---

[13] However, the Second Circuit did not affirm the district court's holding in *Velasco Lopez* (i.e., that the allocation of the burden on the noncitizen at a § 1226(a) bond hearing violates due process); instead, it affirmed the judgment on alternative grounds (i.e., that additional procedures at a new bond hearing were constitutionally necessary when a noncitizen's detention becomes unduly prolonged). *Velasco Lopez*, 978 F.3d at 854. The district court cases categorically requiring the government to bear the burden at any § 1226(a) bond hearing are not binding on this Court.

If, after the bond hearing, the IJ concludes that the noncitizen should not be released, the noncitizen may appeal that decision to the BIA. *See* 8 C.F.R.§§ 236.1(d)(3),1003.19(f),1003.38, 1236.1(d)(3). Moreover, a noncitizen is permitted to seek a new custody determination (*i.e.*, a bond hearing before an IJ) at any time during the proceedings. *See* 8 C.F.R. § 1003.19. But such request generally *shall only be considered* upon a showing that the noncitizen's circumstances have changed materially since the prior bond hearing. *Id.* The outcome of that hearing is also appealable to the BIA, *see Matter of Uluocha*, 20 I. & N. Dec. 133, 134 (BIA 1989).

### B. Alvarado Received a Bond Hearing Consistent with Due Process

Alvarado's detention has been accompanied by sufficient procedural safeguards, including a bond hearing before an IJ, and thus fully comports with due process. As a threshold matter, Alvarado has no right to be released during the pendency of his immigration proceedings. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("Congress eliminated any presumption of release pending deportation"). Importantly, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. As the Supreme Court has ruled, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotations omitted). Further, due process "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 321. It requires only that the government provide "'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 690-91).

It is undisputed that Alvarado received a bond hearing during his § 1226(a) detention by which noncitizens are afforded numerous procedural safeguards: an initial custody determination

24

from ICE, requests for a subsequent custody redetermination hearing before an IJ and an administrative appeal. Here, ICE conducted an initial custody determination on the same day that it arrested Alvarado and declined to release him. Decl. ¶ 21. Alvarado subsequently requested and received an individualized bond hearing before an IJ on May 18, 2022. Decl. ¶¶ 22, 30. In a written decision on June 23, 2022,[14] concluding that Alvarado had not met his burden of proof to demonstrate that he is not a danger to the community and is not a flight risk, the IJ declined to release him on bond, Alvarado appealed to the BIA. Decl. ¶ 30, 31; Gov't Return Ex. 7. . Decl. ¶ 31. On December 20, 2022, the BIA dismissed his appeal as moot given that Alvarado became subject to a final order of removal. These administrative procedures satisfy the constitutional requirements of a meaningful opportunity to be heard, and thus his detention has been accompanied by the requisite process.

## CONCLUSION

For the foregoing reasons, the Court should transfer this habeas action to the Western District of Louisiana, or in the alternative, deny Alvarado's Petition.

---

[14] Courts in this district have held that that the allocation of the burden on the noncitizen at a § 1226(a) bond hearing violates due process. *See Garcia v. Decker*, No. 20-cv-1345 (LJL), 2020 WL 1435007 at *8 (S.D.N.Y. Mar. 24, 2020); *Cabanillas Lazo v. Decker*, No. 19-cv-08513 (AJN) at 1 (S.D.N.Y. Jan. 31, 2020) (Dkt. No. 19). However, the Supreme Court has held that it is "clearly contrary" to the language of § 1226(a) to require the government bear the burden of proof at bond hearings, much less by clear and convincing evidence, and declined to find any constitutional concerns requiring procedural protections beyond those already in place. *Jennings*, 138 S. Ct. at 848. In addition, relying on regulatory language, district courts have acknowledged that noncitizens bear the burden of proof in § 1226(a) bond hearings. *See, e.g., Hylton v. Shanahan*, 15 Civ. 1243 (LTS), 2015 WL 3604328, at *7 (S.D.N.Y. June 9, 2015).

Dated: New York, New York
      June 23, 2023                          Respectfully submitted,

                                               DAMIAN WILLIAMS
                                               United States Attorney for the
                                               Southern District of New York
                                               *Attorney for Respondents*

                                    By:    */s/ Nancy D. Pham*
                                               NANCY D. PHAM
                                             Special Assistant United States Attorney
                                             86 Chambers Street, Third Floor
                                             New York, New York 10007
                                             Telephone: (202) 305-8062
                                             Fax: (212) 637-2686
                                             E-mail: nancy.pham3@usdoj.gov